RECEIVED

NOV 2 3 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 04CR20075** |
| **VERSUS** | * | **JUDGE MELANCON** |
| **GREGORY JAMES CATON** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Petition for Writ of *Habeas Corpus* pursuant to 28 U.S.C. §2255, filed by petitioner, Gregory James Caton. [rec. doc. 27]. The Government has filed an Answer and Memorandum in Support of it's Answer, to which petitioner has filed a Reply. [rec. doc. 33 and 34]. Petitioner is incarcerated at the Federal Correctional Complex in Beaumont, Texas.

In the instant motion to vacate, petitioner asserts several claims for relief including claims that he received ineffective assistance of counsel because his attorney, Lewis O. Unglesby ("Unglesby"), failed to file an appeal on his behalf and that he received ineffective assistance of counsel at sentencing because his attorney failed to argue claims based on *Blakely v. Washington,* 124 S.Ct. 2531 (2004).[1]

For the following reasons, the undersigned recommends that the **Clerk REINSTATE** petitioner's judgment of conviction and sentence on this court's docket as of **December 5, 2005**, that date representing the date from which the time for filing a notice of direct appeal shall run. **IT IS FURTHER RECOMMENDED** that petitioner's

---

[1]Petitioner also asserts that he received ineffective assistance of counsel because the cumulative effect of these errors by counsel deprived him of Due Process. However, in light of the above ruling, this court need not address this claim.

claim that he received ineffective assistance of counsel at sentencing because his attorney failed to argue claims based on *Blakely v. Washington,* 124 S.Ct. 2531 (2004) be **DISMISSED WITH PREJUDICE** and his remaining claim that he received ineffective assistance of counsel because the cumulative effect of these errors by counsel deprived him of Due Process be **DISMISSED WITHOUT PREJUDICE.**

## STATEMENT OF CLAIM

On October 15, 2003, petitioner was indicted for being a felon in possession of firearms in violation of 18 U.S.C. §922(g)(1) and 924(a)(2). The government also sought the forfeiture of the firearms and various rounds of ammunition which petitioner was charged with possessing. *United States v. Caton,* 03-20092 (W.D.La. 2003).

On May 26, 2004, pursuant to a plea agreement, petitioner waived indictment and pleaded guilty to counts one and two of a three count Bill of Information charging him with Mail Fraud in violation of 18 U.S.C. §1341 and 1342, and Introduction of Unapproved New Drugs into Interstate Commerce in violation of 21 U.S.C. §331(d), 355(a) and 333(a)(2). Petitioner additionally agreed to the forfeiture of property charged in count 3 of the Bill of Information pursuant to 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. § 2461(c). [rec. docs. 1, 2, 3, 4, and 10]. In exchange for his plea, the government agreed not to prosecute petitioner for other offenses related to its investigation occurring between 1999 and September 17, 2003, agreed to dismiss the felon in possession charges in case number 03-20092, agreed that the defendant should receive a three point reduction in petitioner's offense level under the United States Sentencing Guidelines (the

"Guidelines") for acceptance of responsibility, and agreed not prosecute petitioner's wife. [rec. doc. 4].

To factually support petitioner's plea, petitioner, Unglesby and the government executed a Rule 11(f) Factual Stipulation. In his Factual Stipulation, petitioner admitted that he used "an Internet site" to sell his unapproved drugs, that he received approximately $950,000 from his sales, that on at least two occasions the drugs were shipped to victims located in Indianapolis, Indiana and Plantation, Florida, and that he purchased two buildings in Calcasieu Parish, Louisiana to facilitate the scheme to which he pled guilty. [rec. doc. 8].

A Presentence Investigation Report ("PSI") was prepared by the United States Probation Department. The PSI recommended finding petitioner's total offense level was 22 and his criminal history category was I, which yielded a recommended guideline range of forty-one (41) to fifty-one (51) months imprisonment. The PSI also recommended the defendant pay $101,184.76 in restitution. In calculating petitioner's total offense level, the PSI increased petitioner's base offense level of 6 as follows: 11 levels for the amount of loss pursuant to USSG §2F1.1(b)(1)(L); 2 levels for more than minimal planning pursuant to USSG §2F1.1(b)(2)(A); 2 levels for mass marketing pursuant to §2F1.1(b)(3); 2 levels for use of sophisticated means pursuant to USSG §2F1.1(b)(6)(C); and 2 levels for petitioner's "conscious or reckless risk of serious bodily injury" pursuant to USSG 2F1.1(b)(7)(A).[2] The PSI also recommended decreasing petitioner's offense level by

_____

[2]The probation officer used the Guidelines in effect at the time of petitioner's conduct, the November 1, 2000 edition of the United States Sentencing Commission Guidelines Manual, to calculate petitioner's guideline range as that

three levels for petitioner's acceptance of responsibility pursuant to USSG §3E1.1(a) and (b) in accordance with petitioner's plea agreement.

On August 24, 2004, the court held a sentencing hearing. Petitioner objected to the addition of 2 points for "conscious or reckless risk of serious bodily injury" pursuant to USSG §2F1.1(b)(7)(A) because that enhancement presumed that Caton knew the use of his drug could result in serious injury. Counsel argued that "there is no proof of conscious knowledge by Caton." [rec. doc. 17; see also rec. doc. 25, pg. 3-7, 17-20]. This objection was sustained by the court. [rec. doc. 25, pg. 21].

Petitioner also objected to the court ordering Caton to pay $101,184.76 in restitution, on the grounds that the victim was comparatively at fault for her injuries and further that the victim was using another drug which may have caused the victim's injuries. [rec. doc. 17; se also rec. doc. 25, pg. 7-17]. The court sustained this objection as well, noting the pending civil suit against Caton and the likelihood that the victim would be made whole by an award in the suit or by settlement of that claim with petitioner's insurer. Thus, the court did not order restitution. [rec. doc. 25, pg. 21-22].

At the conclusion of the sentencing hearing, on August 24, 2004, petitioner's total offense level was lowered to 20. Considering petitioner's Category I criminal history, the guideline range for imprisonment was determined to be thirty-three (33) to forty-one (41) months. [rec. doc. 25, pg. 23]. After finding this guideline range "reasonably address[ed] the criminal conduct in question", the Court sentenced petitioner to thirty-three (33)

---

edition was more favorable to petitioner than the edition which was in effect at the time of sentencing.

months imprisonment, the minimum term of imprisonment on each count, the sentences to run concurrently. [rec. doc. 19 and 22; rec. doc. 25, pg. 24].

The instant §2255 motion was filed on April 13, 2005. In his Motion, petitioner contends that during a post-sentencing consultation, he requested that his retained attorney, Unglesby, file an appeal on his behalf. In support, petitioner attached his affidavit in which he stated that he requested and paid Unglesby to appeal his sentence and that Unglesby failed to file the requested appeal. [affidavit ¶ 2, 4, and 5]. Moreover, petitioner stated that Unglesby had not consulted with petitioner before Unglesby advised the court at sentencing that the petitioner was not going to appeal his sentence. No appeal was ever filed.[3] [affidavit ¶ 3].

In response, the government contends that petitioner's affidavit is self-serving and therefore should be given little weight. The government also notes that since petitioner pled guilty, the likelihood of a viable appeal was diminished. Therefore, the government contends that petitioner has failed to satisfy his burden of establishing ineffective assistance of counsel. [rec. doc. 33]. The government submitted no affidavits or other evidence in support of its position. Specifically, the government did not submit the affidavit of defense counsel Unglesby.

Because there was no evidence in the record regarding (1) Unglesby's position as to what transpired after sentencing and, more specifically, whether petitioner requested

---

[3]The record reveals that petitioner was advised by the Court of his right to appeal his sentence and the time limitation for filing same, as well as his right to court appointed counsel if he was unable to afford the services of an attorney to handle an appeal. [sent. tr. pg. 26]. Moreover, the record reveals that during sentencing, while petitioner was present in open court, Unglesby expressly advised the court that he would not appeal any adverse rulings on his objections to the PSI. [sent. tr. pg. 11]. The defendant, who was of course present, made no statement to the contrary.

Unglesby to file a notice of appeal on his behalf, (2) whether Unglesby believed that petitioner did not wish to appeal his sentence, or (3) whether Unglesby informed petitioner that he would not take an appeal on his behalf or that his fee did not include appellate services, an evidentiary hearing was conducted before the undersigned Magistrate Judge on November 18, 2005. Wayne Blanchard of the Federal Public Defender's Office was appointed to represent petitioner at the hearing. [rec. doc. 41, 42].

Prior to the hearing, due to petitioner's impending release date, the undersigned informed counsel that the undersigned would also address petitioner's claim that counsel was ineffective at sentencing for failing to argue claims based on *Blakely v. Washington,* 124 S.Ct. 2531 (2004). [rec. doc. 44].

Testifying at the hearing were petitioner's wife, Cathryn Caton, petitioner, and Unglesby. Petitioner entered the following exhibits: 1) Affidavit of Richard D. Moreno; 2) copies of checks, including a $25,000 check payable to Unglesby; 3) a $10, 000 Wire Transfer from Washington Mutual; 4) a $15, 000 Wire Transfer from Washington Mutual; 5) letter from Mr. Blanchard to United States Probation Officer Hyatt dated July 16, 2004 in the case of Michael Brent Chesson[4]; (6) letter from Mr. Blanchard to United States Probation Officer Hyatt dated July 8, 2004 in the case of Michael Brent Chesson;[5] 7) Fifth Circuit decision in *United States v. Chesson,* No. 04-30834 (5th Cir. 2005) issued November 17, 2005; (8) fax letter from Cathryn Caton to Lisa at the Unglesby law firm

---

[4]The parties entered into a factual stipulation with respect to exhibits 5 and 6, namely, whether a *Blakely* objection was made in a particular case was not an "across the board" policy of the Federal Public Defenders Office, but rather depended on strategic considerations. Mr. Blanchard also stated that he didn't file such objections in every case. [tr. pg. 6-7].

[5]See fn. 4, supra.

dated January 20, 2005; (9) fax response from "Lou" to Cathryn Caton dated January 20, 2005; and (10) fax letter from Cathryn Caton to Lisa at the Unglesby law firm dated January 17, 2005.

During the hearing, Cathryn Caton testified that she hired and paid Unglesby $50,000.00 to represent her husband. This is confirmed by the copies of the cancelled check and wire transfer instructions. Although there was no written agreement, it was her understanding that this amount was a "one-time fee" which "would cover everything from trial to appeal, and/or if it was over quickly with a plea bargain, that it would cover everything." [tr. pg. 9-10].

By affidavit, Richard D. Moreno testified that he was Caton's interim counsel of record after Caton's arrest on the gun charges. On September 19, 2003, he attended a meeting with Cathryn Caton and Unglesby. During that meeting, Mrs. Caton asked what Unglesby's fee to represent Caton would be and Unglesby responded $50,000. There was "no discussion that the $50,000 was solely for negotiation of a plea bargain or any suggestion that the $50,000 fee was for anything less than trial and appeal." Moreover, Moreno did not recall "any specific reference to whether the $50,000 fee would include an appeal if one were required nor was there any affirmative statement that any appeal would be a separate matter." Finally, Moreno was not aware of any written agreement as to the scope of Unglesby's representation of petitioner. [Ex. 2].

Petitioner Gregory J. Caton testified that on the day that he was sentenced, he called Unglesby and asked Unglesby to appeal his sentence. [tr. pg. 12]. He stated that he made that call because he was surprised at sentencing that Unglesby had stated in court

that he was not going to appeal certain points, but that he had "paid for an appeal". During the call, petitioner testified that Unglesby stated that he "would take care of it [the appeal]." However, during the thirty day period between petitioner's sentencing and self-surrender date, Caton discovered that Unglesby had not filed an appeal on his behalf. [tr. pg. 12-13].

Unglesby testified that he did not specifically recall any conversation with Caton after sentencing about an appeal, but he did not think an appeal had been discussed. [tr. pg. 15, 25-26]. Moreover, Unglesby repeatedly testified that he did not recall even consulting with Caton about an appeal after sentencing. [tr. pg. 15, 22, 25-26]. Unglesby testified that he did not believe they had discussed an appeal because he believed that Caton was happy or satisfied with his sentence. [tr. pg. 16, 21]. Moreover, Unglesby noted that "there was nothing to appeal." [tr. pg. 26]. Rather, discussions about an appeal occurred when they "were agreeing to the agreement." [tr. pg. 15]. These discussions about an appeal were in the context of an adverse judgment after trial or if there was some unique issue regarding FDA law. [tr. pg. 22-23, 24-25]. Unglesby testified that he did not disagree with anything in the Moreno affidavit. [tr. pg. 15, 23].

Unglesby also testified that he had no communication with Caton about an appeal after Caton began serving his sentence. [tr. pg. 30]. After seeing the faxes sent by Cathryn Caton to his office in January 2005, Unglesby testified that he could not deny receipt of the faxes and that the response on one of the faxes was in his secretary's handwriting but apparently done at his direction. [tr. pg. 31].

With respect to his reasons for not lodging an objection during sentencing based on *Blakely*, Unglesby testified that although he was aware of the *Blakely* decision, he had strategic reasons for not objecting to the sentence on *Blakely* grounds. [tr. pg. 28-29, 17]. Unglesby testified that Caton was facing a five year sentence on the gun charges alone, without considering the FDA charges. The government agreed to drop the gun charges in return for Caton's plea on the Bill of Information. [tr. pg. 17]. Moreover, as a result of the plea agreement and objections to the PSI sustained by the Court, Unglesby testified that he was able to allow Caton to keep his house and limit his sentence to an amount of time which would allow him to be released so that he could have a future and more time to spend with his son and wife. [tr. pg. 19]. Unglesby testified that he also had been successful in reducing Caton's possible sentence on "factual issues" [tr. pg. 20]. Had petitioner objected, nothing in his opinion would have prevented the judge from voiding the plea agreement and sentencing petitioner on the gun charges. [tr. pg. 17-18].

Moreover, it was his opinion that if Caton began "from scratch" he "would be very fortunate to be at 33 months." [tr. pg. 22]. Finally, Unglesby stated that "there was nothing to appeal." [tr. pg. 26]. Judge Melancon gave Caton the lowest possible sentence under the Guidelines, and there was no indication by the Judge that he felt "constrained" or "hamstrung" by the Guidelines or that he "was having to do something that he didn't want to do by giving [petitioner] 33 months...." [tr. pg. 26-27]. Thus, under the now advisory guidelines, if on appeal Caton was granted a new sentencing, "there is no telling where that will go." [tr. pg. 26].

At the conclusion of the testimony and after hearing argument by counsel, the court informed the parties that the matter would be considered submitted and taken under advisement and that an expedited ruling would be issued. This report follows.

## LAW AND ANALYSIS

**Ineffective Assistance of Counsel – Failure to a File Notice of Appeal**

In *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029 (2000), the United States Supreme Court set forth the standards applicable to a claim of ineffective assistance of counsel due to counsel's failure to file a notice of appeal. When discussing the first *Strickland v. Washington,* 466 U.S. 668 (1984) inquiry, whether counsel's performance was deficient, the Court reaffirmed that a "lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe*, 120 S.Ct. at 1035 citing *Rodriquez v. United States,* 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969) and *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999). Moreover, the Court reaffirmed that "at the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.* citing *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). For cases that lie between those poles, that is, where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, an antecedent question must be answered, specifically, "whether counsel in fact consulted with the defendant about an appeal." The term "consult" was defined in this context as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a

reasonable effort to discover the defendant's wishes." Thus, the court held that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.*

With respect to the element of prejudice, the Court said that a defendant must demonstrate that but for counsel's deficient performance he would have appealed. Accordingly, "when counsel's deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* at 484.

Petitioner claims that this case falls within the first *Roe* scenario, that is, that he expressly told his attorney, Unglesby, to appeal his sentence, but that Unglesby failed to do so. Given that Caton admittedly knew that there had been no appeal filed within thirty days of his sentence but failed to inquire about the waiver of *Blakely* issues until January 17, 2005, five days after the United States Supreme Court issued its decision in *Booker*, and further failed to file this petition until April 13, 2005, the undersigned finds that Caton's testimony on this point is suspect. Nevertheless, Unglesby did not testify that Caton did not expressly request an appeal. Thus, Unglesby's testimony does not contradict Caton's direct testimony on this crucial point. Simply stated, Unglesby had no recollection of any discussion or any consultation with Caton after sentencing as to whether an appeal should be taken, but he, Unglesby, could not specifically deny such a discussion.

Discounting Caton's testimony, petitioner's claim would be categorized as falling within the third *Roe* scenario. In such cases, the antecedent question must be answered, specifically, "whether [Unglesby] in fact consulted with [Caton] about an appeal." Unglesby candidly admitted that he had no recollection of meeting with Caton after sentencing to discuss an appeal. Moreover, there is no evidence in the record that Unglesby ever met with Caton after sentencing to advise Caton about the advantages and disadvantages of taking an appeal. Rather, it was Unglesby's perception, without ever having specifically consulted with his client, that Mr. Caton was satisfied with his sentence. It therefore appears that Mr. Unglesby did not "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and [did not] mak[e] a reasonable effort to discover the defendant's wishes." Thus, even completely discounting Caton's testimony, the antecedent question in this case would be answered in the negative.

It is certainly plausible, as Unglesby testified, that "everyone left the courthouse happy", that "[n]obody was saying lets ... appeal" and that the petitioner is "jailhouse lawyering...[y]ou get to jail and then you say, oh, well, maybe I could do better." [tr. pg. 21 and 22]. Nevertheless, after sentencing Unglesby's testimony is that he never discussed an appeal with petitioner.

*Roe* holds that counsel's performance may be constitutionally ineffective if he fails to consult with his client about an appeal. However, if both petitioner and Unglesby understood that no appeal would be taken, the undersigned would not hold that Unglesby was ineffective. That is the gist of Unglesby's testimony, and the fact that petitioner did not raise the issue of appeal with Unglesby until after *Booker* was decided, almost five

months after sentencing, supports that position. However, given the fact that petitioner's specific testimony is that he instructed Unglesby to appeal and the fact that Unglesby cannot specifically deny this instruction was given, and the strong favor the law provides for the right of appeal, the undersigned recommends that petitioner be granted a remedy based on his petition.

**Remedy**

In *Roe*, the United States Supreme Court reaffirmed it's prior holdings regarding the proper remedy when a criminal defendant is deprived of a direct appeal as a result of his counsel's constitutionally deficient performance. In such circumstances, the criminal defendant is entitled to a direct appeal. *Roe-Flores*, 120 S.Ct. at 1035 and 1039 citing *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit...we hold that when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal.").

With respect to the procedure for implementing that remedy on a §2255 motion to vacate, the Fifth Circuit has set forth specific instructions. Focusing on a claim of ineffective assistance of counsel due to counsel's failure to file a direct appeal on behalf of a criminal defendant, and noting that the other grounds raised within the §2255 motion could be resolved on direct appeal, the Fifth Circuit instructed the district court as follows:

> "[T]he §2255 petition is to be dismissed without prejudice.
> Mack's judgment of conviction is then to be reinstated on the
> docket of the trial court as of the date to be fixed by the trial
> court from which the time of the appeal shall run. If, on the
> other hand, the district court finds that Mack is not entitled to
> relief, it shall reinstate its judgment denying the §2255
> petition."

*Mack v. Smith*, 659 F.2d 23, 25-26 (5th Cir. 1981).

The Fifth Circuit recently reaffirmed that procedure finding the *Mack* court's

instructions "binding precedent." *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001).

Noting the distinction between the statutory remedy set out in § 2255 and judicial remedy

crafted in *Mack*, the court articulated that the Fifth Circuit's judicial remedy of granting

an out-of-time-appeal by re-entering the criminal judgment on the district court's docket

provides the same result as the statutory remedy requiring the judgment be vacated and

the defendant be re-sentenced. *Id.* at 460. Moreover, the court again noted that "part of

the procedure for granting an out-of-time direct criminal appeal is dismissing the §2255

motion without prejudice..." *Id.*

In light of the above, petitioner's judgment of conviction and sentence should be

re-instated on the docket of this court on a date to be fixed, from which the time for the

filing of a notice of appeal shall run.

Although the Fifth Circuit has also indicated that the instant petition should be

dismissed without prejudice pending petitioner's out-of-time appeal, given the special

circumstances of this case, namely petitioner's impending release date and the likelihood

that petitioner's appeal will not be concluded prior to petitioner's release, this court will

address petitioner's other ineffective assistance claim on the merits at this time.

**Ineffective Assistance of Counsel – Failure to Object on *Blakely* Grounds**

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984). The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. The court's scrutiny is "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689-90. See also *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985).

*Strickland's* prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[6] A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) citing *Strickland,* 104 S.Ct. at 2068. A petitioner must affirmatively prove

---

[6]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

> Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

> When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

prejudice. *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Mangum v. Hargett*, 67

F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th Cir. 1998). Self

serving conclusory statements that the outcome would have been different "fall far short

of satisfying *Strickland*'s prejudice element." *Sayre*, 238 F.3d at 635. Moreover,

allegations of a mere possibility of a different outcome are insufficient to establish

prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999). With respect to

sentencing errors, "any amount of actual jail time" which the defendant receives as a

result of alleged attorney error constitutes prejudice for purposes of the *Strickland* test.

*United States v. Conley*, 349 F.3d 837, 842 (5th Cir. 2003) citing and quoting *Glover v.*

*United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) and *United*

*States v. Franks*, 230 F.3d 811, 815 (5th Cir.2000).

    Because both *Strickland* factors, that of deficient performance and prejudice, must

be satisfied, "an ineffective assistance contention may be rejected on an insufficient

showing of prejudice, without inquiry into the adequacy of counsel's performance."

*Strickland*, 466 U.S. at 689-94. Petitioner must satisfy both prongs of *Strickland*,

demonstrating both that counsel's performance was deficient and that the deficiency

prejudiced the defense. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v.*

*Johnson*, 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory

allegations in support of a claim of ineffective assistance of counsel are insufficient to

raise a constitutional issue." *Green*, 160 F.3d at 1043.

Petitioner contends that he was denied the effective assistance of counsel at sentencing because counsel failed to argue claims based on *Blakely v. Washington,* 124 S.Ct. 2531 (2004).

The following time line is relevant to petitioner's claim. Petitioner pled guilty on May 26, 2004. Approximately one month later, on June 24, 2004, the United States Supreme Court issued the *Blakely* decision. Thereafter, on July 12, 2004 the Fifth Circuit issued its decision in *United States v. Pineiro,* 377 F.3d 464 (5th Cir. 2004). Caton was sentenced on August 24, 2004. Petitioner's appeal delays ran on September 26, 2004, ten days after entry of judgement on this court's docket. See FRAP 4(b)(1) and (6). On January 12, 2005, the United States Supreme Court issued its decision in *United States v. Booker,* -- U.S. --, 125 S.Ct. 738 (2005).

In *Blakely,* the Court invalidated a sentence imposed under the sentencing regime of the State of Washington. The Court relied on it's prior decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) which requires that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt", as the primary basis for the decision. The Court found that the relevant "'statutory maximum' sentence for *Apprendi* purposes is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id*. at 2537. In rendering it's decision, the Court noted that the federal Sentencing Guidelines were not before the Court and the Court therefore expressly declined to express any opinion as to them. *Id*. at 2538, fn. 9.

In *Pineiro*, the Fifth Circuit considered the impact of *Blakely* on the Guidelines.

Considering the *Blakely* decision, prior Supreme Court cases and Fifth Circuit precedent,

the Fifth Circuit held that the reasoning in *Blakely* did **not** invalidate the Guidelines. This

holding was based on the court's view that the relevant "statutory maximum" for

*Apprendi* purposes was the maximum punishment authorized by Congress for the offense

of conviction, not the sentencing range authorized after consideration of the factors set

forth in the Guidelines. In so holding, the Fifth Circuit affirmed the continuing validity

of prior circuit precedent establishing that "[j]udicial findings under the Guidelines that

set sentences within that [statutorily] authorized range ... do not offend the Constitution."

*Id.* at 473.

Post-*Blakely* and pre-*Booker*, a majority of circuits held that *Blakely* did not apply

to the Guidelines. See *United States v. Hammoud*, 381 F.3d 316, 345 (4th Cir. 9-8-04) (en

banc); *United States v. Ricketts*, 122 Fed.Appx. 4, 6 (4th Cir. 12-9-04); *United States v.*

*Pineiro*, 377 F.3d 464, 465-466 (5th Cir. 7-12-04); *United States v. Koch*, 383 F.3d 436,

438 (6th Cir. 8-26-04) (en banc); *United States v. Reese*, 382 F.3d 1308, 1310 (11th Cir. 9-

2-04); *United States v. Mincey*, 380 F.3d 102, 105 (2nd Cir. 8-12-04)[7]; *Leonard v. United*

---

[7]The Second Circuit had previously certified the question to the United States Supreme Court. *United States v. Penaranda*, 375 F.3d 238 (2nd Cir. 7-8-04). However, in order to give the lower courts "guidance" pending the Supreme Court's decision, the Second Circuit issued *Mincey* in which it ruled that "[u]nless and until the Supreme Court rules otherwise, the law in this Circuit remains..." unchanged. That law permitted judges to sentence within the statutory range based on their factual findings. *Mincey*, 380 F.3d at 105-106.

*States*, 383 F.3d 1146, 1146 (10ᵗʰ Cir. 9-8-04)[8]; *United States v. Horton*, 118 Fed.Appx. 462, 464 (10ᵗʰ Cir. 12-16-04)[9].

Two Circuits held that *Blakely* did apply to the Guidelines. See *United States v. Booker*, 375 F.3d 508, 515 (7ᵗʰ Cir. 7-9-04); *United States v. Ameline*, 376 F.3d 967, 974 (9ᵗʰ Cir. 7-21-04). Another Circuit apparently issued panel opinions finding that *Blakely* did apply to the Guidelines. See *United States v. Mooney*, 2004 WL 1636960 (8ᵗʰ Cir. 7-23-04);*United States v. Pirani*, 2004 WL 1748930 (8ᵗʰ Cir. 8-5-04). However, those decisions were vacated for rehearing *en banc* and withdrawn from publication. The *en banc* court of the Eighth Circuit never issued a decision in either case on this issue before *Booker* was decided. See *United States v. Mooney*, 401 F.3d 940 (8ᵗʰ Cir. 2005); *United States v. Pirani*, 406 F.3d 543 (8ᵗʰ Cir. 2005).

The United States Supreme Court had previously upheld the constitutionality of the Guidelines on several occasions. See *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647 (1989) (separation of powers and excess delegation of power); *Edwards v. United States*, 523 U.S. 511, 118 S.Ct. 1475 (1998) (statutory and Sixth Amendment claims[10]).

---

[8] In *Leonard*, the Tenth Circuit denied permission to file a successive §2255 motion based on *Blakely* noting the Supreme Court had neither ruled that *Blakely* is applicable to the federal sentencing guidelines, nor expressly held that the rule announced in *Blakely* was retroactive on collateral review.

[9] In a case on direct appeal, citing *Leonard*, the Tenth Circuit stated that "[i]n *Blakely*,...'[t]he Court...did not invalidate the Federal Sentencing Guidelines or hold that *Blakely* applies to the Federal Sentencing Guidelines.'" The court then found that "even if *Blakely* does apply to the federal guidelines", the appellant was not entitled to relief under the plain error analysis.

[10] The Court's opinion was mainly concerned with the statutory claims. The Court also turned away a potential constitutional argument without explaining what that argument would be. However, the defendants' briefs show that they raised Sixth Amendment considerations. See *Pineiro*, 377 F.3d at 471 and fn. 5.

In *Booker*, the Court made *Blakely* applicable to the Guidelines. Thus, any facts necessary to support a federal sentence must be "established by a plea of guilty or jury verdict...admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S.Ct. at 756. The Court also held that the Guidelines, as enacted, violated the Sixth Amendment because the Guidelines required a judge to sentence a defendant based on facts not reflected in a guilty plea or jury verdict. To remedy that problem, the Court struck the provision of the federal sentencing statute which made that Guidelines mandatory, leaving the remainder of the statute intact, thus, rendering the Guidelines advisory.

An attorney's performance must be assessed on the basis of the facts of the particular case "viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690; *Rompilla v. Beard*, ---U.S. ----, 125 S.Ct. 2456, 2462, --- L.Ed.2d ---- (2005) ("in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' ..."). From the above chronology, it is clear that petitioner was sentenced after *Blakely*, but before *Booker*. Moreover, it is clear that at the time of petitioner's sentencing any argument made by counsel to the trial court based on *Blakely* was foreclosed by the Fifth Circuit's decision in *Pineiro*.

Generally, counsel is not ineffective for failing to anticipate future changes in the law; counsel is not required to be clairvoyant. See *United States v. Cooks*, 461 F.2d 530, 532 (5th Cir. 1972); *Lucas v. Johnson*, 132 F.3d 1069, 1078-1079 (5th Cir. 1998); *Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir. 1997). Moreover, counsel is not ineffective for

failing to make frivolous objections. *United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) citing *Green*, 160 F.3d at 1037 ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness...."); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) citing *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). Therefore, the undersigned finds that Unglesby's lack of prescience in predicting *Booker* was not outside "the range of competence" for the following reasons.

Initially, the undersigned notes that the United States Supreme Court had already upheld the constitutionality of the Guidelines on several occasions. See *Mistretta*; *Edwards;* supra. Moreover, in *Blakely*, the Court explicitly stated that its decision regarding Washington's sentencing guidelines did not apply to the Guidelines. *See Blakely,* 124 S.Ct. at 2533, 2539 n. 9 ("This case is not about the constitutionality of determinate sentencing, but only about how it can be implemented in a way that respects the Sixth Amendment...The Federal Guidelines are not before us, and we express no opinion on them.").

Furthermore, in response to this unequivocal language in *Blakely*, during the period after *Blakely* and before *Booker,* a majority of circuits, including the Fifth Circuit, held that the principle announced in *Blakely did not* apply to the Guidelines. See *Hammoud*; *Ricketts*; *Pineiro*; *Koch*; *Reese*; *Mincey; Leonard;* and *Horton*, supra. Clearly, given these circuit court interpretations, some of which were decided *en banc*, a

reasonably competent criminal defense counsel could, like these circuit court judges, believe that the Guidelines would not be invalidated. That is particularly the case here, since the Fifth Circuit decided *Pineiro* before Caton was sentenced.

Clearly, if Unglesby had objected to the application of the Guidelines at the time of Caton's sentence, the court would have had no choice but to over-rule the objection because of the then existing Circuit precedent, *Pineiro*. Accordingly, the question becomes whether or not it was ineffective, in *Strickland* terms, to have nevertheless made the objection in order to preserve the issue in case *Pineiro* was reversed by the Supreme Court.

The undersigned has not found any case holding counsel ineffective for failing to anticipate either *Blakely* or *Booker* following *Apprendi*. To the contrary, the courts have uniformly held that counsel was not ineffective for failing to predict this future development in the law. See *Lach v. United States*, 2005 WL 1019238, *1 at fn. 1 (D.Utah 2005); *Faison v. United States*, 2005 WL 3008576, *1 (E.D.Mich. 2005) (counsel advised petitioner to plead guilty and waive his appellate rights); *Waeghe v. United States*, 2005 WL 2156416, *3 (W.D.Mich. 2005) (counsel advised petitioner to accept an alternate sentence arrangement and then failed to appeal to secure the benefits of that alternate sentence); *United States v. Williams*, 374 F.Supp.2d 173, 176-177 (D.D.C. 2005); *United States v. Claiborne*, 388 F.Supp.2d 676, 682 (E.D.Va. 2005); *Schultz v. United States*, 2005 WL 1529698, *1 (S.D.N.Y. 2005); *Conley v. United States*, 2005 WL 1420843, *3 (W.D.Mich. 2005); *Fuller v. United States*, 398 F.3d 644, 650 fn.

4 (7th Cir. 2005) (in dictum stating that any argument that counsel was ineffective for

failing to anticipate *Blakely* or *Booker* would be untenable); *United States v. Burgess*, 142

Fed.Appx. 232, 241 (6th Cir. 2005) (unpublished); *Thomas v. United States*, 2005 WL

1252262, *3 (E.D.Va. 2005); *Sprouse v. United States*, 2005 WL 1278947, *3 (W.D.Va.

2005); *Frost v. United States*, 2005WL 331470, *1 (D.N.H. 2005); *United States v. Call*,

2005 WL 1840258, *5-6 (E.D.Tenn. 2005); *Schenecker v. United States*, 2005 WL

1861968, *4 (W.D.Mo. 2005); *Farmer v. United States*, 2005 WL 2811885, *5

(E.D.Tenn. 2005).   The undersigned agrees with the results reached by these courts.

Petitioner's sentence did not violate the principles set forth in *Blakely*.

Accordingly, Unglesby cannot be held to have been ineffective for failing to raise *Blakely*

at sentencing.  Even if Unglesby had argued the potential unconstitutional application of

the Guidelines based on *Blakely*, that argument would have had no application to Caton's

case.  See *Burgess*, 142 Fed.Appx. at 240; *Call*, 2005 WL 1840258 at *5-6.  Moreover, in

addition to his specific strategic reasons as to why he did not object on *Blakely* grounds at

sentencing[11], Unglesby testified that in his opinion there was nothing to appeal.  Under

the facts of this case, the undersigned must agree.

*Blakely* recognized that a court may constitutionally impose sentence

enhancements on the basis of facts admitted by the defendant.  *See Blakely,* 124 S.Ct. at

---

[11]The undersigned notes that Unglesby's stated strategic reasons are neither a model of clarity nor completely convincing, given that petitioner's plea bargain did not require petitioner to waive sentencing objections based on *Blakley*, despite the fact that Unglesby negotiated a highly favorable plea agreement for petitioner.  However, the *Strickland* standard requires this court to examine the objective reasonableness of counsel's decision measured by prevailing professional norms. See *Draughton v. Dretke*, 427 F.3d 286, 293 (5th Cir. 2005) citing *Strickland* at 688. Therefore, under the proper standard and in accordance with the above analysis, there is no reason to analyze counsel's stated subjective strategic reasons as they are not necessary for proper disposition of petitioner's claim.

2537. In his Factual Stipulation, petitioner admitted that he used "an Internet site" to sell his unapproved drugs, that he received approximately $950,000 from his sales, that on at least two occasions the drugs were shipped to victims in Indianapolis, Indiana and Plantation, Florida, and that he purchased two buildings in Calcasieu Parish, Louisiana to facilitate his scheme. Given this factual stipulation, it appears that petitioner either expressly or impliedly admitted the factual basis for the enhancements he ultimately received in this case.[12] Section 2F1.1(b)(1)(L) of the Guidelines required an eleven level increase for amounts of loss more than $800,000 but less than $1,500,000. Petitioner stipulated that he earned $950,000 from his scheme, a sum clearly falling within this section.[13]

Petitioner received a two level increase for more than minimal planning pursuant to §2F1.1(b)(2)(A). The commentary to that section indicates that "more than minimal planning" means "more planning than is typical for commission of the offense in a simple form" or if "affirmative steps were taken to conceal the offense...." See Commentary, Application Note 2 citing Commentary Application Notes to §1B1.1. Petitioner admitted that in order to facilitate his scheme he purchased two buildings and set up an Internet sight. Clearly, those affirmative actions constitute more than typical planning for commission of the offense.

---

[12]See fn. 2, supra.

[13]The Commentary and Application Notes to this section indicate that valuation of the loss is "the value of the money, property or services unlawfully taken." See Application Note 8.

Petitioner also received a two level increase for using mass marketing pursuant to §2F1.1(b)(3). The Commentary and Application Notes for that section indicates that the enhancement applies when the crime is conducted through solicitation by Internet to purchase goods. Commentary, Application Note 3. Again, petitioner expressly admitted that his sales were via the Internet.

Finally, section 2F1.1(b)(6)(C) requires a two level increase for offenses involving sophisticated means. "Sophisticated Means" is defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense" and lists as an example a telemarketing scheme where the main office is located in one jurisdiction but solicitation operations are in another jurisdiction. Commentary, Application Note 18. Petitioner admitted similar sophisticated means. He admitted the purchase of two buildings located in Calcasieu Parish, Louisiana and delivery of items to victims solicited in Indianapolis, Indiana and Plantation, Florida. For these reasons, petitioner's sentence did not violate the principles set out by the Supreme Court in *Blakely.* The conduct supporting the enhancements received in this case were admitted and stipulated by petitioner. Accordingly, any argument raised by Unglesby based on *Blakely* would have been rejected because the rationale for the *Blakely* decision was not present in petitioner's case. Counsel's performance, properly viewed at the time of petitioner's sentencing, cannot therefore be found ineffective. See *Burgess* and *Call,* supra.; See also *Preston*, 209 F.3d at 783 citing *Green*, 160 F.3d at 1037; *Johnson*, 306 F.3d at 255 citing *Koch,* 907 F.2d at 527.

Petitioner's sole recourse on appeal would therefore have been under *Booker*'s

ultimate holding that the Guidelines were not mandatory, but were merely advisory. At

least one court has found that counsel could not have been expected to foresee that

*Booker* would invalidate the mandatory nature of the Guidelines. *Williams*, 374

F.Supp.2d at 177. The undersigned agrees with that holding. Even if one could

reasonably foresee that the principles set forth in *Blakely* would be applied to the Federal

Guidelines, one could not reasonably have expected that the Court would go even further

and invalidate the mandatory nature of the Guidelines, and hold the Guidelines to be

merely advisory. Indeed, four of the Justices on the Court did not agree with that

holding.[14]

Finally, given the above analysis, petitioner cannot demonstrate that Unglesby's

alleged failure to object caused him prejudice. As noted by Unglesby in his testimony

during the evidentiary hearing, there is no evidence in the record which suggests that

Judge Melancon felt "constrained" or "hamstrung" to sentence petitioner within the

Guideline range.[15] To the contrary, the Judge indicated that he felt the Guideline range

"reasonably address[ed] the criminal conduct in question." [rec. doc. 25, pg. 24]. Thus,

there is nothing in the record to suggest that had Judge Melancon sentenced petitioner

---

[14]With respect to the remedy portion of the opinion drafted by Justice Breyer, only Justices Rehnquist, O'Connor, Kennedy and Ginsburg joined, while Justices Stevens, Scalia, Souter and Thomas dissented.

[15]The undersigned notes that Judge Melancon commented that judges "all the time...do things that we don't believe in...but it's the law, and that's the oath I took when they gave me this wonderful job." That comment occurred during argument on whether the judge should order restitution, a question which under the circumstances of this case was not clearly answered by the Guidelines, and was in response to the prosecutor's comment that "judges can do anything they want." Thus, in context, this comment does not appear to be an indication by Judge Melancon that he did not want to be bound by the Guideline range, but rather that he did not want the prosecutor's statement that the Court had unlimited discretion to be left unanswered.

using the Guideline range as advisory only, that petitioner would not have received the exact sentence imposed in this case.

In sum, petitioner has not demonstrated that his counsel's performance was objectively unreasonable or that he was prejudiced by his counsel's alleged inaction. Accordingly, petitioner is not entitled to relief on his claim that counsel was ineffective at sentencing for failing to object to the sentence based on *Blakely*.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the **clerk REINSTATE** petitioner's judgment of conviction and sentence on this court's docket as of **December 5, 2005**, that date representing the date from which the time for filing a notice of direct appeal shall run. **IT IS FURTHER RECOMMENDED** that petitioner's claim that he received ineffective assistance of counsel at sentencing because his attorney failed to argue claims based on *Blakely v. Washington,* 124 S.Ct. 2531 (2004) be **DISMISSED WITH PREJUDICE** and his remaining claim that he received ineffective assistance of counsel because the cumulative effect of these errors by counsel deprived him of Due Process be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers at Lafayette, Louisiana, this 22 day of November, 2005.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

COPY SENT:
DATE: 11-23-05
BY:
TO:
C MH